[No. S165113. July 12, 2010.]

LOS ANGELES UNIFIED SCHOOL DISTRICT, Plaintiff, Cross-defendant and Respondent, v.
GREAT AMERICAN INSURANCE COMPANY, Defendant and Appellant; HAYWARD CONSTRUCTION COMPANY, Defendant, Cross-complainant and Appellant.

742

## Counsel

Wilson, Elser, Moskowitz, Eidelman &. Dicker, John J. Immordino and Susannah M. Dudley for Defendant and Appellant.

Monteleone & McCrory, Joseph A. Miller, Leighton T. Brown II, John M. McGowan and Scott R. Lane for Defendant, Cross-complainant and Appellant.

Miller, Morton, Caillat & Nevis and Stevan C. Adelman for Associated General Contractors of California as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

Crawford & Bangs, E. Scott Holbrook, Jr., and Kelly A. Sze for American Subcontractors Association and American Subcontractors Association of California as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

Law Offices of Lawrence H. Kay, Lawrence H. Kay; Rutan & Tucker, William T. Eliopoulos, John L. Antracoli and Kaveh Badiei for Construction Employers' Association as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

Kamine Collings & Phelps, Bernard S. Kamine, Michaelbrent Collings and Daniel J. Phelps for Engineering Contractors' Association and Southern

California Contractors Association as Amici Curiae on behalf of Defendant and Appellant and Defendant, Cross-complainant and Appellant.

Roberta M. Fesler, Mark Fall; Jones Day, Elwood Lui, Daniel D. McMillan, Katie A. Richardson; Bergman & Dacey, Gregory M. Bergman, John P. Dacey, Jorge J. Luna and Mark W. Waterman for Plaintiff, Cross-defendant and Respondent.

Charles F. Robinson and Stephen P. Morrell for The Regents of the University of California as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

Richard L. Hamilton for California School Boards Association and its Education Legal Alliance as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

Lemieux & O'Neill and Steven P. O'Neill for West Basin Municipal Water District as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

Scott Twomey, in pro. per., for Hospital Association of Southern California as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

Stubbs & Leone and Gregory E. Stubbs for The League of California Cities, The California State Association of Counties, The California Special Districts Association and The California Association of Sanitation Agencies as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

## OPINION

**WERDEGAR, J.**—We have long recognized that "[a] contractor of public works who, acting reasonably, is misled by incorrect plans and specifications issued by the public authorities as the basis for bids and who, as a result, submits a bid which is lower than he would have otherwise made may recover in a contract action for extra work or expenses necessitated by the conditions being other than as represented." (*Souza & McCue Constr. Co. v. Superior Court* (1962) 57 Cal.2d 508, 510 [20 Cal.Rptr. 634, 370 P.2d 338].) In this case we decide whether a contractor may also recover when the plans and specifications are correct, but the public authority failed to disclose information in its possession that materially affected the cost of performance. The question has divided the Courts of Appeal.

One Court of Appeal, followed here by the trial court, has held that to recover for nondisclosure, the contractor must show the public entity affirmatively

misrepresented or intentionally concealed material facts that rendered the furnished information misleading. (*Jasper Construction, Inc. v. Foothill Junior College Dist.* (1979) 91 Cal.App.3d 1, 10–11 [153 Cal.Rptr. 767].) Another Court of Appeal has held a contractor need not prove an "affirmative fraudulent intent to conceal" when disclosure would have eliminated or materially qualified the misleading effect of facts disclosed. (*Welch v. State of California* (1983) 139 Cal.App.3d 546, 556 [188 Cal.Rptr. 726].) A third has suggested that the careless failure to disclose information may allow recovery if the public entity possessed superior knowledge inaccessible to the contractor. (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 552 [66 Cal.Rptr.3d 175].) And the Court of Appeal in the instant case broadly held a contractor need show only that the public entity knew material facts concerning the project that would affect the contractor's bid or performance and failed to disclose those facts to the contractor.

We hold a contractor need not prove an affirmative fraudulent intent to conceal. Rather—with the qualifications stated below—a public entity may be required to provide extra compensation if it knew, but failed to disclose, material facts that would affect the contractor's bid or performance. Because public entities do not insure contractors against their own negligence, relief for nondisclosure is appropriate only when (1) the contractor submitted its bid or undertook to perform without material information that affected performance costs; (2) the public entity was in possession of the information and was aware the contractor had no knowledge of, nor any reason to obtain, such information; (3) any contract specifications or other information furnished by the public entity to the contractor misled the contractor or did not put it on notice to inquire; and (4) the public entity failed to provide the relevant information.

## BACKGROUND

In 1996, the Los Angeles Unified School District (District) entered into a contract with Lewis Jorge Construction Management, Inc. (Lewis Jorge), to construct an elementary school for approximately $10.1 million according to plans and specifications developed by the District. In 1999, the District terminated the contract, declaring Lewis Jorge to be in material breach and default. The District then sought proposals from other contractors, including Hayward Construction Company (Hayward), to correct defects in Lewis Jorge's work and complete the project. The District provided prospective bidders with copies of the original plans and specifications and also with 108 pages of what the parties characterize as a "current correction list" or sometimes as "pre-punch lists," cataloging work by the previous contractor that the District's inspectors and subinspectors found to be defective, incomplete or missing.

Although the pre-punch lists appear to refer only to defects visible by simple inspection, they include language indicating the District also intended to make the contractor awarded the job responsible for unlisted defects in existing work. A list provided by the District's chief inspector accordingly recited: "Corrections or comments made in regard to the pre-punch list during this review do not relieve the Contractor from compliance with the requirements of the drawings and specifications. This review is only for General Conformance with the design concept of this project and general compliance with the information given in the Contract Documents. . . ."

After receiving the plans, specifications and pre-punch lists, and conducting a site inspection, Hayward submitted a proposal to do the work on a time and materials basis, stating a "guaranteed maximum price" of $4.5 million. The District accepted Hayward's bid, and in June 1999 the parties entered into a contract to complete the project. The written agreement recites that Hayward agreed to "correct deficiencies in the work performed by the former contractor, without limitation, as noted on the current correction list issued by the District." It also recites that the maximum amount payable by the District for the cost of the work plus Hayward's fee would not exceed $4.5 million. And, "[a]s to any warranties in the Contract Documents, including those as to defective workmanship and materials, the Contractor assumes responsibility for his own work, materials, equipment and services and the work, materials, equipment and services done by subcontractors and supplied by material men and suppliers working under such subcontractors, including patent (evident) defective work done by the former contractor that the Contractor is required to correct to complete the Project." Great American Insurance Company (Great American) issued a performance bond for $4.5 million, guaranteeing Hayward's performance of the contract.

Shortly after beginning work, Hayward informed the District it had significantly underestimated the cost of the remedial work, explaining that the existing work had nonconformities and deficiencies that had not been noted on the pre-punch lists and could not have been detected by simple observation. For example, the pre-punch lists called for repairing and cleaning portions of the exterior stucco, but Hayward reported that upon removing some of the plaster surfacing, it discovered it could make acceptable repairs only by removing and replacing the entire exterior surface plus portions of an underlying material. The pre-punch lists also called for fixing tiles at a few locations, but Hayward reported that after removing selected tiles for repair, it determined the entire installation of tile was unacceptable. In the end, Hayward sought extra compensation in the amount of $2,847,592 for work necessitated by what it characterized as latent defects.

The District disputed that Hayward was entitled to any sum above the $4.5 million guaranteed maximum, but paid Hayward an extra $1 million under an

express reservation of rights to take action to recover the additional compensation. It then instituted this action against Hayward and Great American. Hayward cross-complained, asserting it was entitled to the additional compensation because it had been required to perform work that had not been specified in the contract and the pre-punch lists, that the District had breached the contract by misrepresenting and concealing material facts and conditions, and that the District had breached an express or implied warranty that the plans and specifications it provided were complete and accurately depicted the work required to complete the project. In support of these theories, Hayward alleged the District had failed to disclose the full nature and extent of the defects in the existing construction, and had failed to disclose information that would have put Hayward on notice that some of its assumptions about the scope of the work required were faulty. For example, Hayward asserted the District had failed to disclose a consultant's report that would have alerted Hayward to the defects in the stucco work and further asserted that the District was aware Hayward's intended method for curing stucco discoloration would not be effective.

The trial court first granted the District summary adjudication on the issue of contract interpretation, rejecting Hayward's claim that the contract, properly interpreted, limited Hayward's responsibility for correcting defects to the defects listed on the pre-punch lists. Then, as relevant here, it granted the District judgment on the pleadings, rejecting Hayward's claims of breach of contract by misrepresentation or nondisclosure, and breach of warranty, reasoning that under *Jasper Construction, Inc. v. Foothill Junior College Dist.*, *supra*, 91 Cal.App.3d at page 10, Hayward could not recover because it had not recited facts that would allow a conclusion that the District either actively concealed or intentionally omitted material information. The court entered judgment in favor of the District in the amount of $1,133,696.38.

The Court of Appeal reversed both the grant of summary adjudication[1] and the judgment on the pleadings. As relevant here, it held: "Hayward may maintain a cross-action for breach of contract based on nondisclosure of material information if it can establish that the District knew material facts concerning the project that would affect Hayward's bid or performance and failed to disclose those facts to Hayward."

## DISCUSSION

It has long been the rule that a contractor that has agreed to a particular performance at a specified price may not avoid its contractual

---

[1] The Court of Appeal found that the trial court had improperly excluded evidence supporting Hayward's interpretation of the contract. We are not here concerned with that ruling.

obligations or seek additional compensation for performing them because unanticipated difficulties are encountered. (*United States v. Spearin* (1918) 248 U.S. 132, 136 [63 L.Ed. 166, 54, 39 S.Ct. 59]; *Wunderlich v. State of California* (1967) 65 Cal.2d 777, 782–783 [56 Cal.Rptr. 473, 423 P.2d 545].)[2] But as we observed at the outset, it is also settled that "[a] contractor of public works who, acting reasonably, is misled by incorrect plans and specifications issued by the public authorities as the basis for bids and who, as a result, submits a bid which is lower than he would have otherwise made may recover in a contract action for extra work or expenses necessitated by the conditions being other than as represented." (*Souza & McCue Constr. Co. v. Superior Court, supra*, 57 Cal.2d at p. 510.) Consequently, although in such cases a contractor may not be entitled to quantum meruit recovery for work performed beyond the contract requirements (see *Amelco Electric v. City of Thousand Oaks* (2002) 27 Cal.4th 228, 234 [115 Cal.Rptr.2d 900, 38 P.3d 1120]), and Government Code section 818.8 bars tort actions for fraudulent misrepresentation,[3] the contractor retains a cause of action in contract (*Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 293–294 [85 Cal.Rptr. 444, 466 P.2d 996]; *E. H. Morrill Co. v. State of California* (1967) 65 Cal.2d 787, 793–794 [56 Cal.Rptr. 479, 423 P.2d 551]). As we explained in *Souza*: "When the state makes a contract with an individual it is liable for a breach of its agreement in like manner as an individual, and the doctrine of governmental immunity does not apply." (*Souza*, at p. 510.)

■ The plans and specifications furnished by the District to Hayward were developed in connection with the original construction project awarded to the previous contractor, and Hayward does not suggest that its difficulties were in any way affected by some misrepresentation or omission in them.[4] Hayward contends, rather, the District breached the implied warranty by failing to impart information in its possession that would have put Hayward on notice of latent defects in the work done by the previous contractor. We have not had occasion to resolve a case brought solely on a theory of

[2] The Legislature has altered the common law rule of contractor liability when the unanticipated difficulty results from subsoil conditions. Public Contract Code section 7104 thus requires public contracts to include a provision allowing for change orders in response to such conditions. There is no statute providing for change orders for difficulties resulting from other kinds of unanticipated conditions.

[3] Government Code section 818.8, part of California's Government Claims Act (Gov. Code, § 810 et seq.), provides: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."

[4] Because Hayward's claim is not brought on a theory that the plans and specifications were inaccurate and Hayward does not assert that the District was required to develop new plans and specifications in connection with the completion project, we have no reason to consider Public Contract Code section 1104, which generally prohibits local public entities from requiring bidders to assume responsibility for the completeness and accuracy of architectural or engineering plans and specifications on public works projects.

nondisclosure. We have, however, recognized there are instances when a public entity's nondisclosure may provide grounds for relief. In *City of Salinas v. Souza & McCue Construction Co.* (1967) 66 Cal.2d 217, 222–223 [57 Cal.Rptr. 337, 424 P.2d 921], we upheld a judgment for the contractor entered after the trial court found a city had *actively* concealed its knowledge of site conditions, but we more broadly observed: "It is the general rule that by failing to impart its knowledge of difficulties to be encountered in a project, the owner will be liable for misrepresentation if the contractor is unable to perform according to the contract provisions." (*Id.* at p. 222.) And in *Warner Constr. Corp. v. City of Los Angeles, supra,* 2 Cal.3d at page 294, we described "at least three instances" in which a contractor may have a cause of action against a public entity for nondisclosure of material facts: "(1) the defendant [public entity] makes representations but does not disclose facts which materially qualify the facts disclosed, or which render [the] disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff [contractor]; (3) the defendant actively conceals discovery from the [contractor]." (Fns. omitted.) Although we affirmed a judgment against the city after finding all three instances to be present, we viewed each instance as an independent basis for liability.

The Courts of Appeal have also recognized that a public entity's nondisclosure may support an award of damages without a showing of intentional misrepresentation. The court in *Welch v. State of California, supra,* 139 Cal.App.3d 546, reversed a judgment in favor of the state entered after the trial court found the contractor had failed to prove the public entity had " 'actively and intentionally' " concealed information. (*Id.* at p. 556.) It explained that our decision in *Warner Constr. Corp. v. City of Los Angeles, supra,* 2 Cal.3d 285, made it clear that liability might be imposed in the absence of an intentional failure to disclose when the disclosure "would have eliminated or materially qualified the misleading effect of [the public entity's positive representation]." (*Welch,* at p. 556.) And in *Thompson Pacific Construction, Inc. v. City of Sunnyvale, supra,* 155 Cal.App.4th at page 552, the court observed: "[C]areless failure to disclose information may form the basis for an implied warranty claim if the defendant possesses superior knowledge inaccessible to the contractor or where that which was disclosed is likely to mislead in the absence of the undisclosed information."

■ The Restatement Second of Contracts is in accord that nondisclosure may be actionable, explaining: "A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist in the following cases only: [¶] (a) where he knows that disclosure of the fact is necessary to prevent some previous assertion from being a misrepresentation or from being fraudulent or material. [¶] (b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on

which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing. [¶] (c) where he knows that disclosure of the fact would correct a mistake of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part. [¶] (d) where the other person is entitled to know the fact because of a relation of trust and confidence between them." (Rest.2d Contracts, § 161.)[5]

Other jurisdictions have accepted that nondisclosure may be a basis for public entity liability. Most notably, the federal courts employ a standard developed out of the decision in *Helene Curtis Industries, Inc. v. U.S.* (1963) 160 Ct.Cl. 437 [312 F.2d 774]. The plaintiff in that case was the low bidder on a project to produce quantities of a disinfectant for the United States Army. It was established the army possessed information that would have alerted bidders that, contrary to their reasonable expectations, one of the required components of the disinfectant could not be simply mixed into the finished product, but required grinding—a process that substantially increased production costs. The United States Court of Claims acknowledged that "[w]here the Government has made no misrepresentations, has no duty to disclose information, and does not improperly interfere with performance, the fixed-price contractor of course bears the burden of unanticipated increases in cost . . . ." (*Id.*, 312 F.2d at p. 777.) The court held, however, that when the government "possess[es] vital information which it was aware the bidders needed but would not have, [it] could not properly let them flounder on their own. Although it is not a fiduciary toward its contractors, the Government— where the balance of knowledge is so clearly on its side—can no more betray a contractor into a ruinous course of action by silence than by the written or spoken word." (*Id.* at p. 778.) Following *Helene Curtis*, the federal courts adopted the "superior knowledge doctrine," which allows relief when (1) a contractor undertakes to perform without vital information or knowledge of a fact that affects performance costs or duration, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such

---

[5] The District asserts that a standard allowing recovery in the absence of intentional misrepresentation or fraudulent concealment is inconsistent with the tort of fraudulent concealment, which as usually formulated includes elements of intentional concealment or suppression with an intent to defraud. (See *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 131 [61 Cal.Rptr.3d 221].) Hayward's claim is contractual. Moreover, tort law recognizes a claim for negligent misrepresentation, which allows recovery in the absence of scienter or intent to defraud (Civ. Code, § 1710, subd. 2; *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173–174 [132 Cal.Rptr.2d 490, 65 P.3d 1255]) and attaches liability to "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact" (Civ. Code, § 1710, subd. 3). And tort law also recognizes that a party having exclusive knowledge of information materially affecting the value of a transaction may have a duty to disclose that information to the other party even in the absence of a fiduciary relationship. (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 796, pp. 1151–1152.)

information, (3) any contract specification misled the contractor or did not put it on notice to inquire, and (4) the government failed to provide the relevant information. (E.g., *AT&T Communications, Inc. v. Perry* (Fed.Cir. 2002) 296 F.3d 1307, 1312; *American Ship Building Co. v. U.S.* (1981) 228 Ct.Cl. 220 [654 F.2d 75, 79]; see also Annot., Public Contracts: Duty of Public Authority to Disclose to Contractor Information, Allegedly in Its Possession, Affecting Cost or Feasibility of Project (1978) 86 A.L.R.3d 182 [collecting cases].) The superior knowledge doctrine thus requires the public entity to have been aware it possessed material information unknown to the contractor, but does not require that the entity have an affirmative intent to deceive.

The District argues that to allow recovery without a showing of fraudulent intent would force public entities to act as insurers for contractors, encourage underbidding, and relieve bidding contractors from the necessity of conducting their own investigations into the conditions of performance. The argument fails to acknowledge the limitations on liability inherent in the superior knowledge doctrine and also recognized by California law.

The point is illustrated by our opinion in *Wunderlich v. State of California, supra,* 65 Cal.2d 777. The state there had reported the results of tests conducted at a particular site for the presence of sand and gravel that might be used in a construction project. The contractor assumed from the state's report that the site would produce all the sand and gravel needed for the project; when that assumption proved incorrect, the contractor sued for damages. We found in favor of the state, thus impliedly concluding the state had no obligation to obtain and report information that would enable the contractor to accurately estimate its costs. Liability turned on whether the reports the state had furnished were misleading. We held: "[T]he question is whether, under the circumstances of the indefinite nature of the statements and the existence of exculpatory provisions, the bidder could *justifiably* rely on the statements. It does not appear that plaintiffs could have done so, and the state is not responsible for the subjective interpretation placed upon the information by bidders." (*Id.* at p. 786.)

In *Wiechmann Engineers v. State of California ex rel. Dept. Pub. Wks.* (1973) 31 Cal.App.3d 741 [107 Cal.Rptr. 529], the court held a contractor was not entitled to assume from the absence of information about subsurface conditions in a bid package that the state had no knowledge of conditions that might be inconsistent with the contractor's cursory inspection of the site. As relevant here, the court explained: "[K]nowledge of the boulderous condition was not known or accessible only to the state, nor did the state have such facts as were not known or reasonably discoverable by plaintiff, if plaintiff had made what would have been admittedly a reasonable and prudent inquiry." (*Id.* at p. 752.)

■ Thus, existing law holds that public entities have no obligation to investigate the costs of performance independent from the obligation to provide prospective bidders with correct plans and specifications. A public entity is not responsible for erroneous assumptions drawn by a contractor from accurate information provided by the public entity (*Wunderlich v. State of California, supra,* 65 Cal.2d at p. 786) or for unsupported assumptions drawn from the public entity's silence (*Wiechmann Engineers v. State of California ex rel. Dept. Pub. Wks., supra,* 31 Cal.App.3d at p. 752), nor does it have any duty to disclose information that is reasonably available or that the contractor knew or had a realistic opportunity to discover (*John Massman Contracting Co. v. U.S.* (1991) 23 Cl.Ct. 24, 32).[6]

■ Moreover, although Public Contract Code section 1104 prohibits local public entities from requiring bidders to assume responsibility for the completeness and accuracy of architectural or engineering plans and specifications, public entities retain the power to contractually disclaim responsibility for assumptions a contractor might draw from the presence or absence of information. As we explained in *Wunderlich*: "It is obvious that a governmental agency should not be put in the position of encouraging careless bidding by contractors who might anticipate that should conditions differ from optimistic expectations reflected in the bidding, the government will bear the costs of the bidder's error. . . . When there is no misrepresentation of factual matters within the state's knowledge or withholding of material information, and when both parties have equal access to information as to the nature of the tests which resulted in the state's findings, the contractor may not claim in the face of a pertinent disclaimer that the presentation of the information, or a reasonable summary thereof, amounts to a warranty of the conditions that will actually be found." (*Wunderlich v. State of California, supra,* 65 Cal.2d at pp. 786–787.)

■ In sum, established law provides public entities substantial protection against careless bidding practices by contractors and forecloses the possibility that a public entity will be held liable when a contractor's own lack of diligence prevented it from fully appreciating the costs of performance. This being so, protection against careless bidding practices does not require that we allow contractors damaged by a public entity's misleading nondisclosure to recover only on a showing the public entity harbored a fraudulent intent.

---

[6] As noted earlier, the Restatement Second of Contracts explains that a nondisclosure is deemed the equivalent of an assertion in only a few cases, all of which require that the nondisclosing party have actual knowledge that the other party is not in possession of the true facts. (Rest.2d Contracts, § 161.) Comment b to section 161 further explains: "[O]ne is expected to disclose only such facts as he *knows or has reason to know will influence* the other in determining his course of action." (*Id.,* com. b, p. 432, italics added.) Thus the Restatement Second also supports the conclusion that a party has no obligation to disclose information the other party would be expected to obtain on its own.

We therefore disagree with the reasoning in *Jasper Construction, Inc. v. Foothill Junior College Dist., supra,* 91 Cal.App.3d at page 10, that a showing of active misrepresentation or fraudulent concealment is needed to prevent burdening "public entities with liability where the contractor underbids due to lack of diligence in examining specifications and plans which are themselves accurate." Accordingly, we disapprove that court's holding "that there must be an affirmative misrepresentation or concealment of material facts in the plans and specifications in order for the contractor to recover . . . ." (*Ibid.*)[7]

The District asserts that allowing actions for nondisclosure will lead to burdensome practices and costly litigation by compelling public entities to disclose every scrap of information that might relate to a project and encouraging contractors to comb through the entity's files for material that might be used to support an actionable nondisclosure. The danger, we think, is overstated. As explained earlier, significant restrictions already exist on the ability of contractors to recover from public entities on theories of tort or quantum meruit. And in actions for breach of contract, contractors can recover neither for extra work that would have been bid had they exercised due diligence nor for work occasioned by unanticipated conditions either unknown to the public entity or which the public entity had no reason to believe the contractor would not itself discover. Nondisclosure is actionable, moreover, only if the information at issue materially affects the cost of performance, reducing the possibility that a public entity soliciting bids on a project might easily overlook it. Given these limitations on recovery, as between a truly blameless contractor and the nondisclosing public entity that received the benefit of the contractor's work, requiring the public entity to pay for that benefit is hardly unjust.

█ For the reasons stated, we agree with the Court of Appeal that the trial court erred by granting judgment on the pleadings based on the rule stated in *Jasper Construction, Inc. v. Foothill Junior College Dist., supra,* 91 Cal.App.3d at page 10, but we conclude the Court of Appeal's rule was, in turn, overbroad in suggesting that recovery may be had for *any* failure to disclose material information. █ Rather, we hold that a contractor on a public works contract may be entitled to relief for a public entity's nondisclosure in the following limited circumstances: (1) the contractor submitted its bid or undertook to perform without material information that affected

---

[7] Although we disapprove the stated rule in *Jasper,* we agree with the *Jasper* court that, under the circumstances presented there, the trial court erred by providing the jury with instructions suggesting a contractor, knowing it lacks information, is entitled to proceed on its own assumptions and will be entitled to recover additional compensation from the public entity if those assumptions prove to be wrong. (*Jasper Construction, Inc. v. Foothill Junior College Dist., supra,* 91 Cal.App.3d at pp. 11–13.) Nothing we say here should be construed to provide support for such a theory of recovery.

performance costs; (2) the public entity was in possession of the information and was aware the contractor had no knowledge of, nor any reason to obtain, such information; (3) any contract specifications or other information furnished by the public entity to the contractor misled the contractor or did not put it on notice to inquire; and (4) the public entity failed to provide the relevant information. The circumstances affecting recovery may include, but are not limited to, positive warranties or disclaimers made by either party, the information provided by the plans and specifications and related documents, the difficulty of detecting the condition in question, any time constraints the public entity imposed on proposed bidders, and any unwarranted assumptions made by the contractor. ■ The public entity may not be held liable for failing to disclose information a reasonable contractor in like circumstances would or should have discovered on its own, but may be found liable when the totality of the circumstances is such that the public entity knows, or has reason to know, a responsible contractor acting diligently would be unlikely to discover the condition that materially increased the cost of performance.

### DISPOSITION

The judgment of the Court of Appeal is affirmed. The matter is remanded to that court to remand to the superior court for further proceedings in accordance with our opinion and with the Court of Appeal's resolution of the appellate issues not addressed here.

George, C. J., Kennard, J., Baxter, J., Chin., J., and Moreno, J., concurred.

**CORRIGAN, J.,** Dissenting.—The question presented is whether a public entity can be liable on a breach of warranty claim based on an unintentional misrepresentation or nondisclosure of material facts. The majority holds that, generally, a public entity may be liable "if it knew, but failed to disclose, material facts that would affect the contractor's bid or performance." (Maj. opn., *ante*, at p. 745.) The majority then sets forth a four-part test to make this determination modeled after the federal "superior knowledge doctrine." (*Id.* at pp. 753–754.) I believe the majority's holding is contrary to existing precedent.

In *Souza & McCue Constr. Co. v. Superior Court* (1962) 57 Cal.2d 508, 510 [20 Cal.Rptr. 634, 370 P.2d 338], we said, "A contractor of public works who, acting reasonably, is *misled* by incorrect plans and specifications issued by the public authorities as the basis for bids and who, as a result, submits a bid which is lower than he would have otherwise made may recover in a contract action for extra work or expenses necessitated by the conditions being other than as represented." (Italics added.) "This rule is mainly based on the theory that the furnishing of misleading plans and specifications by the public body

constitutes a breach of an implied warranty of their correctness." (*Id.* at pp. 510–511.) Thus, some intentional wrongdoing on the part of the public entity (e.g., the furnishing of misleading plans) was required to hold it liable for a breach of warranty.

We elaborated on this concept in *Wunderlich v. State of California* (1967) 65 Cal.2d 777 [56 Cal.Rptr. 473, 423 P.2d 545] (*Wunderlich*). The plaintiffs sued the state for a breach of implied warranty when ground conditions at a project site were different than represented by test data provided to project bidders. We noted that "[t]he crucial question is thus one of justified reliance. If the agency makes a ' "positive and material representation as to a condition presumably within the knowledge of the government, and upon which . . . the plaintiffs had a right to rely" ' the agency is deemed to have warranted such facts . . . [Citation.]" (*Id.* at p. 783.) We also distinguished between affirmative representations that were intended to mislead and honest statements. While stating that a public entity would be liable for the former, we held that a contractor cannot rely on a public entity's statements when the public entity makes honest statements relating to the property's condition that are "suggestive only." (*Id.* at p. 783.) We stated, "[I]f statements 'honestly made' may be considered as 'suggestive only,' expenses caused by unforeseen conditions will be placed on the contractor . . . ." (*Ibid.*)

We again addressed this general principle in *Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285 [85 Cal.Rptr. 444, 466 P.2d 996]. There, a contractor alleged a breach of the implied warranty of correctness in plans and specifications. The contractor also sued for fraudulent concealment based upon the city's alleged misrepresentations and nondisclosures of subsurface soil conditions. We identified three instances where a cause of action may arise for a public entity's nondisclosure of material facts: "(1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff." (*Warner, supra,* 2 Cal.3d at p. 294, fns. omitted.) With respect to the plaintiff's claim of nondisclosure, we held all three instances of liability were present because the defendant affirmatively misrepresented and intentionally failed to disclose information relating to inaccuracies in the soil test logs prepared by the city and provided to the contractor in the bid package. (*Id.* at pp. 294–295.)

The lower courts have followed our precedent in similar cases. (See *Jasper Construction, Inc. v. Foothill Junior College Dist.* (1979) 91 Cal.App.3d 1, 10 [153 Cal.Rptr. 767] (*Jasper*); *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525 [66 Cal.Rptr.3d 175] (*Thompson*).)

*Jasper* involved a breach of implied warranty claim. The court considered the propriety of a jury instruction that did not require evidence of misrepresentation or intentional concealment. The court held that "there can be no liability of a public entity for extra work caused by plans and specifications that are merely 'incomplete.' . . . [R]ecovery on this theory cannot be maintained upon a showing of a 'defect' unless that defect consists of intentional concealment or positive assertions of material facts which prove to be false or misleading." (*Jasper, supra,* 91 Cal.App.3d at p. 11.) *Thompson* also involved jury instructions in an implied warranty claim. The *Thompson* court reached a result similar to *Jasper* stating, "In order to recover on such an action, the contractor must prove that the agency affirmatively misrepresented, or actively concealed, material facts which rendered the bid documents misleading, and that the contractor reasonably relied on such representations in preparing its bid. [Citation.]" (*Thompson, supra,* 155 Cal.App.4th at p. 551.)

Both of these cases properly relied on our precedent requiring proof that a public entity affirmatively misrepresented or intentionally failed to disclose a material fact to establish a breach of warranty claim.

Here, relying on *Jasper,* the trial court resolved all of Hayward Construction Company's (Hayward) claims in favor of the Los Angeles Unified School District (District), specifically finding that Hayward could not establish a claim for breach of contract based on misrepresentation, because Hayward failed to show that the District actively concealed or intentionally omitted any material information. I believe the trial court's decision correct. *Jasper* is firmly grounded in our precedent and sets forth a rule that is clear, straightforward and easy to apply. It also promotes integrity in the public contract bidding process by discouraging underbidding,[1] while providing contractors protection from improper behavior by a public entity. The *Jasper* rule also punishes public agency misconduct, but avoids blurring the line between affirmative misconduct and negligence.[2]

---

[1] We have stated, "[A] governmental agency should not be put in the position of encouraging careless bidding by contractors who might anticipate that should conditions differ from optimistic expectations reflected in the bidding, the government will bear the costs of the bidder's error." (*Wunderlich, supra,* 65 Cal.2d at p. 786.)

[2] *Welch v. State of California* (1983) 139 Cal.App.3d 546 [188 Cal.Rptr. 726], does not support the majority's holding. In *Welch,* the state provided inaccurate tide data that resulted in increased costs for construction of a pier. *Welch* was decided on the "limited ground" that a public entity can be liable for intentionally withholding information that would "cast doubt" on the truth of facts that were disclosed. (*Id.* at pp. 556, 558–560.) The court expressly refused to reach the contractor's argument that Government Code former section 14270 (now Pub. Contract Code, § 10120) "impose[d] a broader obligation on the State to disclose 'complete' information irrespective of whether the State has affirmatively made misleading representations or partial disclosures." (139 Cal.App.3d at p. 559.) Accordingly, *Welch* was decided on the

The majority's holding shifts an inordinate amount of risk to public entities in public construction contracts and exposes them to needless and protracted litigation.

I would reverse the Court of Appeal's judgment.

narrow ground that a public entity may be liable "for nondisclosure in combination with [its] affirmative and misleading representation." (*Id.* at p. 550.)