[Nos. B221005, B224355. Second Dist., Div. Three. Mar. 29, 2012.]

G. VOSKANIAN CONSTRUCTION, INC., Plaintiff, Cross-defendant and Respondent, v.
ALHAMBRA UNIFIED SCHOOL DISTRICT, Defendant,
Cross-complainant and Appellant;
FIDELITY & DEPOSIT COMPANY OF MARYLAND et al.,
Cross-defendants and Respondents.

COUNSEL

Bergman & Dacey, John P. Dacey and Mitchell C. Frederick for Defendant, Cross-complainant and Appellant.

*Feldman & Associates, Mark A. Feldman and Craig C. Lang* for Plaintiff, Cross-defendant and Respondent and for Cross-defendants and Respondents.

OPINION

**KLEIN, P. J.**—Defendant, cross-complainant and appellant Alhambra Unified School District (the District) appeals a judgment following a jury verdict in favor of plaintiff, cross-defendant and respondent G. Voskanian Construction, Inc. (Voskanian), and cross-defendants and respondents Fidelity & Deposit Company of Maryland (Fidelity) and Old Republic General Insurance Corporation (Old Republic).

The essential issues presented relate to the right of Voskanian, a general contractor, to recover for extra work it performed on two public works contracts.

As to the first contract, the relocation contract, Voskanian is entitled to recover for its extra work because the District eventually issued written change orders authorizing the extra work.

As for the second contract, the fire alarm contract, notwithstanding the lack of a written change order, Voskanian is entitled to recover for the extra work that was required because its bid was based on misleading plans and specifications issued by the District. (*Souza & McCue Constr. Co. v. Superior Court* (1962) 57 Cal.2d 508, 510 [20 Cal.Rptr. 634, 370 P.2d 338] (*Souza*).)

Therefore, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

In June 2006, following competitive bidding, Voskanian and the District entered into a written contract (the first contract or the relocation contract), under which Voskanian was to serve as general contractor for the District and provide certain improvements as part of a project known as the Moor Field

Program Relocation, for compensation of $989,000. Pursuant to the agreement, Voskanian was to move numerous portable buildings to the site of the Moor Field campus.

The first contract, as well as a subsequent contract (the second contract) provided at section 23 that "This Agreement and the other Project Documents can be modified only by an amendment in writing, signed by both parties and pursuant to action of the District's Governing Board." Further, section 24 of the contracts, captioned "Change Orders," stated that change orders submitted by the contractor may be approved by "the District's Assistant Superintendent of Business Services, *or her designee*." (Italics added.) The District's assistant superintendent of business services (Assistant Superintendent) was Cynthia Martin. The first and second contracts did not specify how a "designee" is appointed.

During the course of the project, Martin directed Voskanian to deal with Mark Edwards and James Courteau of BRJ & Associates (BRJ), the construction manager, to finalize change orders with them, and then she would approve whatever they agreed to. The project was under time constraints and had to be completed before schoolchildren returned to school in early September. The relocation project had to be completed within 57 days, and the fire alarm project had to be completed within 45 days. The projects could not be halted for months until the District's board formally approved each change order. The District required the extra work to be completed immediately and then the change orders would be bunched together to be processed by the District.

During the course of the relocation contract, the District and its representatives asked Voskanian to make changes to remedy errors made by the District's architect when preparing the plans, to resolve problems that arose because the site conditions did not match what was contained in the plans, and because the District wanted work outside the scope of the plans.

During the course of the relocation contract it also became clear the architect neglected to include a fire alarm system for the relocated buildings. Therefore, the District prepared new plans and solicited bids for the new fire alarm project. Voskanian's bid was the lowest. Voskanian and the District then entered into the second contract, the $55,000 fire alarm contract, wherein Voskanian was to serve as the general contractor for the fire alarm project.

In accordance with the two contracts, Voskanian also obtained performance bonds from Fidelity.

In soliciting bids for the fire alarm system for the portable buildings that were part of the fire alarm project, the District required bidders to submit

their bids based on the plans and specifications provided at the time of bidding. During the bidding process, Voskanian participated in a "job walk" arranged by the District, to ascertain the interior configurations of the buildings for the fire alarm project. However, because the walkthrough occurred while classes were in session, participants were allowed to view only two of the 16 buildings, and from the doorways only. Voskanian was given a set of the plans only after the job walk, and therefore did not have the benefit of the plans while conducting the job walk.

After Voskanian was awarded the fire alarm contract, it discovered that many of the portable buildings had more rooms than shown on the plans, thus requiring more alarm devices, conduit and wiring. For example, one of the buildings was shown on the plans as a single room with no interior walls; however, as built, that structure had six interior rooms. Due to the error in the plans, Voskanian requested that the District approve a change order for the extra devices that would be needed for the rooms not shown on the plans.

The District originally agreed to pay Voskanian $989,000 for the work performed on the relocation contract, not including the change orders. The District also agreed, before the error in the plans was discovered, to pay Voskanian $55,000 for the work performed on the fire alarm contract, not including the change orders.

Upon completion of the work, the District refused to pay Voskanian the full amount due.

In accordance with the contracts, Voskanian submitted a claim to the District pursuant to Government Code section 910 et seq.[1] Voskanian asserted that on the relocation contract, it was owed $206,367, including $106,225 in unpaid retention and $100,142 for extra work that was unpaid. Voskanian also sought $94,777 on the fire alarm contract, consisting of the entire contract amount of $55,000 plus $39,777 for extra work on that contract.

On September 11, 2007, the District rejected the claim. This litigation followed.

### 2. *Proceedings.*

On September 28, 2007, Voskanian filed suit against the District for breach of written contract and recovery of statutory penalties. On the relocation

---

[1] Section 19.1 of the contracts stated: "Claims Procedures. If Contractor disagrees with the determination of the District on any matter which substantially affects the Contractor's costs, compensation or extent of Work, then Contractor may file a claim with the District and request a review of the decision pursuant to the procedures set forth in this Article 19."

Further, section 19.2 of the contracts obligated the contractor, pending resolution of the dispute, "to continue the Work diligently to completion."

contract, Voskanian sought $106,225 in unpaid retention funds and $100,142 for extra work performed. On the fire alarm contract, Voskanian sought $55,000 for unpaid contract funds, progress payments and retention funds, as well as $39,777 for extra work.[2]

The District filed a cross-complaint against Voskanian for breach of contract. The District's cross-complaint also named Fidelity and Old Republic, seeking to enforce the terms of two performance bonds issued by Fidelity and a contractor's license bond issued by Old Republic.

On July 28, 2009, through August 11, 2009, the matter was tried to a jury. The jury returned a special verdict awarding Voskanian $419,756, including penalties and interest, the precise amount Voskanian had requested at trial. The special verdict included the following findings: a portion of the relocation contract between the District and Voskanian was modified by an oral agreement; the oral modification was the designation of BRJ and James Courteau as "designee" of the District; *the District breached the relocation contract by failing to pay Voskanian for work done and by failing to pay retention amounts due*; Voskanian was entitled to recover $301,190 against the District on the relocation contract; *the District also breached the fire alarm contract project; its breach consisted of nonpayment for work done* by Voskanian and failing to respond to "requests for information" within a reasonable time; and Voskanian was entitled to recover $118,566 from the District on the fire alarm contract.[3]

On October 5, 2009, the trial court entered judgment in favor of Voskanian in the principal sum of $419,756. On November 17, 2009, the trial court denied the District's motion for judgment notwithstanding the verdict (JNOV) and motion for new trial. On December 9, 2009, the District filed a timely notice of appeal from the October 5, 2009 judgment.

On March 24, 2010, the trial court granted Voskanian's motion for attorney fees. On April 20, 2010, the trial court entered an amended judgment which included the award to Voskanian of attorney fees in the sum of $207,295 as well as $79,506 in costs. On May 11, 2010, the District filed notice of appeal from the amended judgment. The two appeals were consolidated.

---

[2] Thus, as Voskanian points out in its brief, a significant portion of the damages it sought were for monies owed for work performed on the original contracts, not for extra work performed or change orders.

[3] The jury also found Voskanian was in breach of the relocation contract and the fire alarm contract, as by failing to complete the work on time as per contract. However, it found Voskanian's breaches were not knowing or willful and that Voskanian was not liable to the District for any damages.

## CONTENTIONS

The District contends the trial court committed reversible error (1) in denying the District's motion to bifurcate and try legal issues first; (2) in denying the District's request to exclude evidence of oral modifications at the Evidence Code section 402 hearing; (3) in denying the District's motion in limine to exclude evidence and argument pertaining to oral modifications of the public works contracts; (4) in giving jury instructions that conflict with settled California law and in refusing to give the District's requested instructions; (5) in denying the District's request for JNOV; (6) in denying the District's motion for new trial; and (7) in making an unauthorized award of attorney fees to Voskanian.

## DISCUSSION

1. *General principles; contractual requirement that change order to public works contract be in writing.*

 a. *Earlier cases.*

"It is frequently provided that change orders for extra work must be in writing. *In the absence of a waiver or modification*, no recovery can be had for alterations or extra work performed without compliance with such a provision." (53 Cal.Jur.3d (2004) Public Works and Contracts, § 48, pp. 304–305, italics added, fns. omitted; accord, Cal. Construction Law Manual (6th ed. 2005) Waiver by conduct, § 1:42, pp. 42–43.)

An example of a contractor recovering for extra work in the absence of a written extra work order is found in *Healy v. Brewster* (1967) 251 Cal.App.2d 541 [59 Cal.Rptr. 752] (*Healy*). Healy was the general contractor and Brewster was the excavation subcontractor on a county airport job. The county engineer submitted a log of borings that represented the job site to be sand and sandy loam. However, the county did not use core drills, but rotary earth drills, which gave inaccurate results. It turned out that instead of the expected sandy loam, most of the material was unsatisfactory hardpan. (*Id.* at pp. 544–545.)

Subcontractor Brewster called attention to the unexpected hardpan conditions and was told by Healy to go ahead with the job and that Brewster would be compensated for the extra expense. (*Healy, supra,* 251 Cal.App.2d at p. 545.) This was done orally, despite the provision in the subcontract calling for a written change order. (*Id.* at pp. 545, 551.) Healy, the general contractor, submitted a claim to the county for extra work; the county refused to pay. (*Id.*

at p. 546.) Thereafter, Healy refused to pay Brewster, who sued Healy and recovered judgment for $67,038.70. (*Id.* at p. 547.)

The reviewing court affirmed. It held, inter alia, " '*the parties, by their conduct,*' " *waived the subcontract's requirement for a change order to be in writing.* (*Healy, supra,* 251 Cal.App.2d at pp. 551–552, italics added.) When Healy promised to pay Brewster the reasonable value of the extra hardpan work, and Brewster relied upon such promise in performing the hardpan work, that conduct resulted in a waiver of the requirement that extra work be approved in writing. (*Ibid.*)

A subsequent case, *Weeshoff Constr. Co. v. Los Angeles County Flood Control Dist.* (1979) 88 Cal.App.3d 579 [152 Cal.Rptr. 19] (*Weeshoff*), held the conduct of the parties may constitute a waiver of a written change order provision even without an express promise to pay for the extra work. (Cal. Construction Law Manual, *supra,* Waiver by conduct, § 1:42.) In *Weeshoff,* a contractor sued a flood control district to recover for extra work in laying temporary pavement in the course of its performance of a construction contract. The district did not issue a written change order in accordance with the contract's " 'Change in Work' provision." (88 Cal.App.3d at pp. 582, 585.) However, the evidence showed the district's representative had ordered the contractor's superintendent to use temporary pavement. (*Id.* at p. 585.) The trial court awarded the contractor $31,781 for extra work performed. (*Id.* at p. 586.)

The reviewing court affirmed. It observed, "California courts generally have upheld the necessity of compliance with contractual provisions regarding written 'change orders.' [Citations.] *However, California decisions have also established that particular circumstances may provide waivers of written 'change order' requirements. If the parties, by their conduct, clearly assent to a change or addition to the contractor's required performance, a written 'change order' requirement may be waived.* (*C. F. Bolster Co. v. J. C. Boespflug Etc. Co.,* 167 Cal.App.2d 143, 150–151 [334 P.2d 247]; *Frank T. Hickey, Inc. v. L.A.J.C. Council,* 128 Cal.App.2d 676, 682–683 [276 P.2d 52].)" (*Weeshoff, supra,* 88 Cal.App.3d at p. 589, italics added.)

b. *More recent cases.*

In *Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104 [65 Cal.Rptr.3d 762] (*Katsura*), an engineer and a city entered into a contract for consultant services for a maximum price of $18,485. (*Id.* at p. 106.) "The contract required that any modifications were only to be made by mutual written consent of the parties." (*Ibid.*) The city paid the engineer's first two invoices, which totaled $15,565. (*Id.* at pp. 106–107.) After completion of the

project, the engineer submitted a final invoice for an additional $23,743.75, which the city refused to pay "because it was beyond the maximum contract price and included work that was not authorized by the contract." (*Id.* at p. 107.) The engineer sued the city for breach of contract and common counts. He admitted he did not follow the contract's written modification requirement, but argued the contract was orally modified to include extra work based on requests by the city's associate engineer and an outside consultant that he perform the work. (*Id.* at pp. 107–108.)

*Katsura* held the concept of oral modification was inapplicable, explaining: "Persons dealing with a public agency are presumed to know the law with respect to any agency's authority to contract. [Citation.] ' "One who deals with the public officer stands presumptively charged with a full knowledge of that officer's powers, and is bound at his . . . peril to ascertain the extent of his . . . powers to bind the government for which he . . . is an officer, and any act of an officer to be valid must find express authority in the law or be necessarily incidental to a power expressly granted." ' " (*Katsura, supra*, 155 Cal.App.4th at p. 109.)

*Katsura* further explained, "There is no provision in the City charter for execution of oral contracts by employees of the City who do not have requisite authority. The alleged oral statements by the associate city engineer and project manager are insufficient to bind the City. ' "No government, whether state or local, is bound to any extent by an officer's acts in excess of his . . . authority." ' " (*Katsura, supra*, 155 Cal.App.4th at p. 109.) *Katsura* added, "We are not unsympathetic to the seeming unfairness of denying payment for work done in good faith by one who has no actual knowledge of the restrictions applicable to municipal contracts." (*Id.* at p. 111.) *Katsura* noted, however, the engineer was not the victim of an innocent mistake, as he was aware of the public contracting procedure and that the extra work was outside the scope of the contract. (*Ibid.*)

*Katsura* also rejected the engineer's reliance on *Weeshoff, supra*, 88 Cal.App.3d 579, explaining, "the continuing viability of *Weeshoff* is questionable. In pronouncing that 'California decisions have also established that particular circumstances may provide waivers of written "change order" requirements,' and '[i]f the parties, by their conduct, clearly assent to a change or addition to the contractor's required performance, a written "change order" requirement may be waived,' the [*Weeshoff*] court cited cases involving private parties, not public agencies. (*Weeshoff Constr. Co. v. Los Angeles County Flood Control Dist., supra*, 88 Cal.App.3d 579, 589.) Since its publication 28 years ago, no case has cited *Weeshoff* for this point. This is understandable as it is contrary to the great weight of authority, cited above, to the contrary." (*Katsura, supra*, 155 Cal.App.4th at p. 111.)

*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332 [119 Cal.Rptr.3d 253] (*P&D*) is in accord with *Katsura*. *P&D*, a breach of contract action, arose from a written agreement between a contractor and a city for services pertaining to a redesign of a municipal golf course. On appeal, the city contended that as a matter of law, the jury's award of $109,093 to the contractor for extra work could not stand because there was no written change order, in violation of provisions of the contract and public contract law (Gov. Code, § 40602).[4] The city argued the trial court erred in instructing the jury that the contract could be modified orally or through the parties' conduct. (190 Cal.App.4th at p. 1335.)

■ *P&D* reversed the judgment based on the contract's requirement of a written change order. "*Unlike private contracts, public contracts requiring written change orders cannot be modified orally or through the parties' conduct.* Thus, even if [the contractor's] evidence pertaining to the oral authorizations of a city employee for extra work is fully credited, [the contractor] cannot prevail. The [trial] court erred by submitting the matter to the jury; it should have granted the City's motion for nonsuit." (*P&D, supra,* 190 Cal.App.4th at p. 1335, italics added.)

*P&D* also reiterated *Katsura*'s criticism of *Weeshoff* as " 'contrary to the great weight of authority . . . .' " (*P&D, supra,* 190 Cal.App.4th at p. 1342.)

Guided by *Katsura* and *P&D*, we conclude the instant contractual require-ment that change orders be in writing could not be waived or orally modified.

2. *Under the facts of this case, Voskanian was entitled to recover for extra work on both contracts.*

a. *With respect to the relocation contract, the change orders were put in writing and ultimately were approved by the District's governing board after the work was completed; therefore, Voskanian was entitled to be paid for said extra work.*

With respect to the relocation contract, the change orders were put in writing and were approved by the District's governing board after the work

---

[4] Government Code section 40602 requires that the mayor or another officer designated by ordinance sign "[a]ll written contracts and conveyances made or entered into by the city." (Gov. Code, § 40602, subd. (b); see *id.,* subd. (c).) In *P&D*, the parties differed as to whether the statute applies to change orders and there appeared to be no published opinion on point. (*P&D, supra,* 190 Cal.App.4th at p. 1335, fn. 1.) The *P&D* court resolved the appeal based on the language of the contract requiring written change orders; therefore, it did not address the statutory issue. (*Id.* at p. 1335.)

was completed. Therefore, with respect to the change orders related to the relocation contract, the issues of oral modification of the written requirement, or of waiver of the written requirement, are an irrelevancy.

The evidence established the change orders which Voskanian negotiated with BRJ in relation to the relocation contract were later approved by the District's governing board. Because the District ultimately issued change orders for the relocation contract, as to said contract Voskanian's claim for payment for extra work does not turn on the validity of any oral change orders.

Specifically, Voskanian completed work on the relocation project in September 2006, at the beginning of the school year. The change orders were processed thereafter. With respect to the relocation contract, the record is as follows: Change order No. 1, consisting of nine items, was issued by the District on January 5, 2007. Change order No. 2, consisting of nine items, was issued by the District on January 8, 2007. Change order No. 3, consisting of nine items, was issued by the District on January 8, 2007. Change order No. 4, consisting of one item, was issued by the District on January 9, 2007. Change order No. 5, consisting of eight items, was issued by the District on June 4, 2007. Change order No. 6, consisting of one item, was issued by the District on September 7, 2007.

In sum, irrespective of the *timing* of the change orders, the District in fact issued written change orders for the relocation contract. Therefore, Voskanian was entitled to recover for the extra work performed in conjunction with the relocation contract. Upon the District's approval of the change orders for the relocation contract, the extra work on the relocation contract was supported by written authorization from the District. Because the District eventually issued written change orders for the relocation contract, we reject the District's contention said extra work by Voskanian was unauthorized.

Thus, the real issue is not whether the extra work by Voskanian was authorized, but rather, how much the District owed Voskanian for the extra work the District had requested. Because Voskanian and the District were unable to agree on the amount of the additional compensation, Voskanian performed the extra work, as required by section 19.2 of the contracts, and then pursued the claims procedure set forth in section 19.1 of the contracts. (See fn. 1, *ante.*) As indicated, Voskanian duly submitted a claim to the District (Gov. Code, § 910 et seq.), the District rejected the claim and this litigation followed. Ultimately, the amount of Voskanian's additional compensation was resolved by the trier of fact.

b. *With respect to the fire alarm contract, Voskanian was entitled to recover for extra work because its bid was based on the District's supplying it with incorrect plans and specifications.*

Unlike the relocation contract, the District did not issue written change orders for the fire alarm contract. Nonetheless, Voskanian also is entitled to recover for the extra work performed in connection with the second contract, because the extra work on the fire alarm contract was necessitated by incorrect plans and specifications issued by the District.

It is settled law that "A contractor of public works who, acting reasonably, *is misled by incorrect plans and specifications* issued by the public authorities as the basis for bids and who, as a result, submits a bid which is lower than he would have otherwise made *may recover in a contract action for extra work or expenses necessitated by the conditions being other than as represented.* [Citations.] This rule is mainly based on the theory that the furnishing of misleading plans and specifications by the public body constitutes a breach of an implied warranty of their correctness." (*Souza, supra,* 57 Cal.2d at pp. 510–511, italics added; accord, *Los Angeles Unified School Dist. v. Great American Ins. Co.* (2010) 49 Cal.4th 739, 744 [112 Cal.Rptr.3d 230, 234 P.3d 490].) In *Souza,* for example, the contractor properly stated a cause of action for breach of contract based on allegations it was induced to make a low bid by the public entity's failure to advise the contractor of unstable soil conditions at the site. (*Souza, supra,* 57 Cal.2d at pp. 509–511.)

This fact situation comes squarely within the *Souza* rationale.

In soliciting bids for the fire alarm system for the portable buildings at the school campus, the District required bidders to submit their bids based on the plans and specifications prepared by the District's architect. After Voskanian was awarded the fire alarm contract, it discovered that many of the portable buildings had more rooms than shown on the plans, thus requiring more alarm devices, conduit and wiring. For example, one of the buildings was shown on the plans as a single room with no interior walls; however, as built, that structure had six interior rooms. Due to the error in the plans, Voskanian requested an additional $39,777 for extra work on the fire alarm contract, over and above the original $55,000 contract price.

Thus, Voskanian's entitlement to recover for extra work performed in connection with the fire alarm contract does not turn upon the issuance of written change orders. Because the extra work on the fire alarm contract was necessitated by incorrect plans and specifications furnished by the District, under settled law Voskanian was entitled to recover for said work.

3. *The District's contentions relating to Voskanian's recovery for its extra work.*

█ As set forth above, the evidence established the change orders which Voskanian negotiated with BRJ in relation to the relocation contract were later approved by the District's governing board, and its extra work on the fire alarm contract was necessitated by the District's supplying Voskanian with inaccurate plans and specifications which understated the scope of the job. Under the law and the facts, Voskanian was entitled to recover for the extra work it performed on both the relocation contract and the fire alarm contract. These circumstances also dispose in large part of the District's contentions on appeal.

We briefly address the District's various contentions below.

a. *Denial of motion to bifurcate.*

The District contends the trial court committed reversible error in denying the District's request to bifurcate and try the legal issues first, in order to establish the following: all modifications to the contracts had to be in writing and approved by the District's governing board to be valid and enforceable; the District's field representatives lacked the authority to modify the contracts; Voskanian is deemed a sophisticated contractor and charged with knowledge of a public entity's limited power to contract and that subordinate employees of the District lacked the power to modify the contracts; Voskanian could not rely on the District's plans as its sole source of information; and the mere fact that work on the contract may have been more difficult than Voskanian anticipated did not entitle Voskanian to additional compensation.

However, Voskanian's entitlement to recover for extra work on the relocation contract is based on the eventual approval by the District's governing board of those change orders, and Voskanian's recovery for its extra work on the fire alarm contract is supported by the misleading plans and specifications supplied by the District. Therefore, the District's legal arguments that there can be no oral modification of a public works contract, and that the District's representatives lacked the authority to modify the contract, are an irrelevancy.

b. *Denial of District's motion to exclude evidence and argument of oral modifications to the public works contracts.*

The District contends the trial court committed reversible error in denying the District's request at an Evidence Code section 402 hearing to exclude evidence of oral modifications, and in denying the District's motion in limine to exclude evidence and argument of any oral modifications to the public works contracts.

Again, because Voskanian's entitlement to recover for the extra work does not depend on the purported oral modifications, the contentions are unavailing.

### c. Claims of instructional error.

The District contends the trial court erred in instructing the jury that a public works contract may be orally modified, and in refusing to give an instruction that oral modifications of public works contracts are not permissible under California law.[5]

As discussed, Voskanian is entitled to recover for the extra work on the relocation contract because those change orders were later approved by the District, and it is entitled to recover for the extra work on the fire alarm contract because that extra work was necessitated by the District's misleading plans and specifications. Because Voskanian's right to recover for the extra work does not depend on the validity of any oral modification, on this record any instructional error pertaining to oral modifications was harmless.

### d. Denial of posttrial motions.

The District contends the trial court erred in denying its motion for JNOV because oral modification fails as a basis for recovery, and because BRJ, the third party construction manager, could not be the District's designee to approve change orders and authorize extra work. The District also contends the trial court erred in denying its motion for new trial on the grounds of instructional error, excessive damages,[6] and insufficiency of the evidence. These arguments are unavailing because, as explained above, Voskanian was entitled to recover for its extra work on both the relocation contract and the fire alarm contract. The District fails to demonstrate prejudicial error in any of these rulings.

### 4. Attorney fees.

The District does not challenge the *amount* of the attorney fee award, only the authority for such an award. The District contends the trial court erred in awarding attorney fees to the prevailing parties because there is no statutory or contractual basis for the award. The District contends Public Contract Code

---

[5] The trial court instructed the jury in pertinent part: "A contract in writing may be modified by an oral agreement to the extent the oral agreement is carried out by the parties. [¶] A contract in writing may be modified by an oral agreement if the parties agree to each other something of value."

[6] The District contends the damages awarded to Voskanian should have been offset by liquidated damages in favor of the District for delay by Voskanian in completing the project.

section 7107 (section 7107) is inapplicable because it authorizes attorney fees to the prevailing party in an action for collection of funds "wrongfully" withheld (*id.*, subd. (f)), and here there was no finding by the jury that the District's withholding was wrongful. The District also contends the attorney fee provision in the performance bonds cannot support the award of attorney fees herein.

### a. *Trial court's ruling.*

The trial court explained its rationale for awarding attorney fees as follows: "Paragraph 9 of the [performance] bond says that if any dispute between the surety and the District related to the bond should result in litigation . . . the prevailing party shall . . . be entitled [to] reasonable attorney's fees . . . . [¶] [T]he bonding company was sued. The bonding company was represented by counsel. I didn't see anything in the opposing papers that indicated that the bonding company wasn't entitled to fees, only that there was a claim that it hadn't incurred any fees, but the bonding company's interest and Voskanian's interest were the same, and they are represented by the same counsel. [*Cruz v. Ayromloo* (2007)] 155 Cal.App.4th 1270, 1277 [66 Cal.Rptr.3d 725] makes it clear that when some parties who are entitled to attorney's fees and others who may or may not be are represented by the same counsel in the same action, attorney's fees are proper as to both parties' expenses, and allocation is not required when the liability of the parties is so factually interrelated that it would have been impossible to separate the activities into compensable and noncompensable time units. Also, when the claims of parties are inextricably intertwined making it impractical, not impossible to separate the activities, then they should be awarded. [¶] Here, [Voskanian] and Fidelity are both represented by the same counsel, and I think that it's pretty clear that the liability of the bonding company was dependent or tied to Voskanian's so they both should be compensated as if they were inextricably intertwined, and I think they were."[7]

### b. *Standard of appellate review.*

On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law. (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 677 [101 Cal.Rptr.2d 127]; *Loduca v. Polyzos* (2007) 153 Cal.App.4th 334, 340 [62 Cal.Rptr.3d 780].)

---

[7] In view of the trial court's determination the attorney fee provision in the performance bond was dispositive, it did not address the applicability of the attorney fee provision found in section 7107. Likewise, it is unnecessary for this court to reach that issue.

c. *Trial court correctly determined Voskanian and Fidelity were entitled to recover attorney fees pursuant to the performance bonds.*

The contracts required Voskanian to obtain a faithful performance bond for each project in an amount equal to 100 percent of the contract price.

In compliance, Voskanian and Fidelity provided a performance bond for both projects, naming Voskanian as principal and Fidelity as surety, utilizing the form provided by the District. Section 9 of the bonds provided that if "any dispute between the Surety and the District related to this Bond should result in litigation, . . . then the prevailing party shall" be entitled to recover reasonable attorney fees.

The District, in its cross-complaint, sued Voskanian and Fidelity to enforce the performance bonds issued in connection with the two projects. The District's third and fourth causes of action for "Enforcement of Performance Bonds" were directed against both Voskanian and Fidelity. Voskanian and Fidelity clearly were the prevailing parties on the cross-complaint brought by the District.

The District contends that because it was not a signatory to the performance bonds, it is not subject to the attorney fee provision contained in the bonds. The contention is unavailing.

*Mepco Services, Inc. v. Saddleback Valley Unified School Dist.* (2010) 189 Cal.App.4th 1027 [117 Cal.Rptr.3d 494] (*Mepco*), involves an identical fact situation and is directly on point. That case involved a dispute between a general contractor and a school district regarding a school modernization project. The contractor sued for breach of contract. The school district filed a cross-complaint against the contractor and its surety on a performance bond; the bond was required under the terms of the construction contract. The contractor prevailed on the complaint, and the contractor and surety successfully defended against the cross-complaint. In addition to damages, the lower court awarded the contractor over $366,000 in attorney fees against the school district. (*Id.* at pp. 1029–1030.)

*Mepco* held the contractor was entitled to recover attorney fees pursuant to the attorney fees provision in the performance bond. *Mepco* explained: "[W]e look to the pleadings to determine whether [school district] Saddleback's cross-complaint sought 'enforcement of the bond,' such that it would have been able to recover its attorney fees under the bond's attorney fee provision. . . . We conclude that Saddleback sought to enforce the bond by way of its cross-complaint. It was Saddleback, not Mepco [the contractor] or Hartford [the surety], that invoked the bond by raising the bond in its cross-complaint. Saddleback named both Mepco and Hartford as defendants

in the cross-action, and specifically alleged a cause of action for breach of the performance bond as to both defendants. Further, Saddleback specified in its cross-complaint that it was seeking to recover its attorney fees pursuant to the bond. [¶] We conclude that if Saddleback had prevailed on its claim for breach of the performance bond, it would have been entitled to recover the attorney fees that it incurred in prosecuting this action. Therefore, pursuant to Civil Code section 1717 and the [case law], Mepco and/or Hartford are entitled to the attorney fees that they incurred in defending against Saddleback's performance bond claim." (*Mepco, supra,* 189 Cal.App.4th at pp. 1047–1048, citation omitted.)

Here, the District prosecuted a cross-complaint to enforce the performance bonds against Voskanian and Fidelity, and it specifically requested attorney fees on the third and fourth causes of action for enforcement of the performance bonds. Guided by *Mepco,* we conclude Voskanian and Fidelity, as the prevailing parties on the District's performance bond claims, were entitled to recover attorney fees pursuant to the fee provision in the performance bonds.

## DISPOSITION

The amended judgment entered April 20, 2010, is affirmed in its entirety. Respondents shall recover costs on appeal.

Kitching, J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 20, 2012, S202362.