[No. B190630. Second Dist., Div. Six. Aug. 15, 2007.]

YOSHIRO KATSURA, Plaintiff and Appellant, v.
CITY OF SAN BUENAVENTURA, Defendant and Respondent.

**COUNSEL**

Corporate Counsel Law Group and Michael A. Sawamura for Plaintiff and Appellant.

Robert G. Boehm and Christopher G. Norman for Defendant and Respondent.

**OPINION**

**PERREN, J.**—Yoshiro Katsura, individually, and doing business as Katsura Consulting Engineers, appeals from a judgment after a bench trial awarding him $2,920, the amount due on a contract with respondent City of San Buenaventura (City). Katsura contends the City owes him an additional $20,823.75 for extra work he performed that was not specified in the contract but was purportedly orally authorized by a City employee and an agent of the City. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 18, 2000, Katsura entered into an engineering consultant contract with the City. Under the terms of the contract, the maximum amount the City would pay for the services was $18,485. The contract required that any modifications were only to be made by mutual written consent of the parties. The contract was signed by the City's public works director and Katsura.

Paragraph 8(F) of the contract authorized "special work" as follows: "The Public Works Director is authorized to make payments up to $1,850 for special items of work not included in the project scope. Payments for special work will only be made after issuance of a written notice to proceed signed by the City Engineer for the specific special tasks. A written scope of work, an agreed upon additional fee, a schedule for starting and completing the special tasks, and an agreed upon extension of the time for performance, if necessary to allow for performance of the special work, shall be required prior to issuance of the notice to proceed for special work. All special work shall be subject to all other terms and provisions of this Agreement."

Katsura submitted his first invoice to the City for $2,943.25 for work performed under the contract during the period January 13, 2000, to April 28, 2000. The City paid the invoice in full.

On February 8, 2001, Katsura submitted his second invoice to the City for $12,621.75 for work performed during the period April 29, 2000, to February 4, 2001. The City paid the invoice in full.

On January 23, 2003, 10 months after completion of the project, Katsura submitted his final invoice for $23,743.75 for work performed during the period February 11, 2001, to March 3, 2002. The City refused to pay the invoice because it was beyond the maximum contract price and included work that was not authorized by the contract.

Katsura filed a complaint for money due on agreement; common count; account stated; open book account. Following a two-day bench trial, the trial court issued a statement of decision, finding Katsura was entitled to recover judgment against the City in the amount of $2,920, the remaining amount owed Katsura under the terms of the contract.

In this appeal, Katsura contends the City is obligated to pay the full amount of the final invoice because the City breached the contract, waived its right to enforce the contract, or the contract was orally modified to authorize the special work.

The City asserts Katsura is not entitled to be paid for the extra work because he did not seek to renegotiate or amend the contract or request authorization for the special work at any time prior to submitting his final invoice.

## DISCUSSION

### Standard of Review

We review the factual findings of the trial court for substantial evidence. On substantial evidence review, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. We accept all evidence favorable to the prevailing party as true and discard contrary evidence. We do not reweigh the evidence or reconsider credibility determinations. (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34 [33 Cal.Rptr.3d 246].) We review questions of law de novo. (*Monterroso v. Moran* (2006) 135 Cal.App.4th 732, 736 [37 Cal.Rptr.3d 694].)

*The City Charter*

The City is a charter city. The City's charter contains the following provision regarding contracts:

"The City shall not be bound by any contract except as hereinafter provided unless the contract shall be made in writing, approved by the City Attorney as to form, approved by the City Council and signed on behalf of the City by an officer or officers as shall be designated by the Council. Any of said such officers shall sign a contract on behalf of the City when directed to do so by the Council.

"By ordinance or resolution the Council may authorize the City Manager to bind the City, with or without a written contract, for the acquisition of equipment, materials, supplies, labor, services or other items included within the budget approved by the Council and shall impose a monetary limit on such authority. . . ." (San Buenaventura City Charter, § 707.)

The city manager was authorized by resolution to enter into contractual relationships for services agreements for amounts under $25,000 for the fiscal years 1999 to 2002.

The city manager delegated his authority to sign contracts to each department head of the City, including the public works director, who signed the contract with Katsura on behalf of the City.

*The City Is Not Required to Pay Katsura for Extra Work*

Katsura admits that he did not follow the procedure set forth in the contract to obtain authorization for special work. He asserts he is entitled to be paid for the extra work he performed because an associate engineer employed by the City and an outside consultant hired by the City to oversee the project requested that he perform the work. He contends that the request to do extra work amounted to a modification of the contract. We disagree.

■ "[A] charter city may not act in conflict with its charter. [Citations.] Any act that is violative of or not in compliance with the charter is void." (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 171 [36 Cal.Rptr.2d 521, 885 P.2d 934].) More than seven decades ago our Supreme Court in *Los Angeles Dredging Co. v. Long Beach* (1930) 210 Cal. 348, 353 [291 P. 839], stated: "Certain general principles have become well established

with respect to municipal contracts . . . . It is . . . settled that the mode of contracting, as prescribed by the municipal charter, is the measure of the power to contract; and a contract made in disregard of the prescribed mode is unenforceable." (See *Amelco Electric v. City of Thousand Oaks* (2002) 27 Cal.4th 228, 242 [115 Cal.Rptr.2d 900, 38 P.3d 1120] ["public works contracts are the subject of intensive statutory regulation and lack the freedom of modification present in private party contracts"].)

■ Persons dealing with a public agency are presumed to know the law with respect to any agency's authority to contract. (*Amelco Electric v. City of Thousand Oaks, supra*, 27 Cal.4th 228, 234.) " 'One who deals with the public officer stands presumptively charged with a full knowledge of that officer's powers, and is bound at his . . . peril to ascertain the extent of his . . . powers to bind the government for which he . . . is an officer, and any act of an officer to be valid must find express authority in the law or be necessarily incidental to a power expressly granted.' " (*Burchett v. City of Newport Beach* (1995) 33 Cal.App.4th 1472, 1479 [40 Cal.Rptr.2d 1].)

■ There is no provision in the City charter for execution of oral contracts by employees of the City who do not have requisite authority. The alleged oral statements by the associate city engineer and project manager are insufficient to bind the City. ■ " 'No government, whether state or local, is bound to any extent by an officer's acts in excess of his . . . authority.' " (*Burchett v. City of Newport Beach, supra*, 33 Cal.App.4th 1472, 1479; see also *G. L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1093–1094 [93 Cal.Rptr.2d 292] [oral contract with a city not expressly authorized by statute is unenforceable].)

Pleading common counts, as Katsura does here, does not abrogate these restrictions. Common counts is an alternate theory of recovery based on a contract that is either "implied in fact" or "implied in law." (*Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 793 [256 P.2d 947]; see also *Lloyd v. Williams* (1964) 227 Cal.App.2d 646, 649 [38 Cal.Rptr. 849] [existence of implied contract is "essential to an action on a common count"].)

It is settled that "a private party cannot sue a public entity on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the

need to protect and limit a public entity's contractual obligations." (*Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 830 [80 Cal.Rptr.2d 549]; see also *G. L. Mezzetta, Inc. v. City of American Canyon, supra,* 78 Cal.App.4th 1087, 1094 [" '[A] contract that does not conform to the prescribed method [for entering into municipal contracts] is void and no implied liability can arise for benefits received by the city . . . .' "].)

As our Supreme Court stated long ago: "[N]o implied liability to pay upon a *quantum meruit* could exist where the prohibition of the statute against contracting in any other manner than as prescribed is disregarded." (*Reams v. Cooley* (1915) 171 Cal. 150, 156–157 [152 P. 293].) The reason is simple: " 'The law never implies an agreement against its own restrictions and prohibitions, or [expressed differently], "the law never implies an obligation to do that which it forbids the party to agree to do." ' " (*Id.* at p. 156, quoting *Zottman v. San Francisco* (1862) 20 Cal. 96, 106.) In other words, contracts that disregard applicable code provisions are beyond the power of the city to make. (*Amelco Electric v. City of Thousand Oaks, supra,* 27 Cal.4th 228, 235.)

Katsura relies on *Weeshoff Constr. Co. v. Los Angeles County Flood Control Dist.* (1979) 88 Cal.App.3d 579 [152 Cal.Rptr. 19], to support his arguments. Katsura's reliance on this case is misplaced for two reasons. First, the case is factually inapposite. *Weeshoff,* unlike the case before us, involved a contract let by public bid. The contract was for street resurfacing. The winning bidder did not include in his bid the cost of "temporary resurfacing" because the contract prohibited use of temporary pavement. After the work had begun, the district demanded, both orally and in writing, that the contractor use temporary resurfacing. When the contractor refused, the district itself placed temporary paving on the roadway. Thereafter, the contractor used temporary pavement to restore traffic lanes in the belief that, if he did not do so, he would be terminated from the project. When the district refused to pay for the extra work, the contractor sued.

The trial court awarded compensation for the extra work the contractor had performed. The Court of Appeal affirmed on the ground that, by ordering temporary pavement to be used, the district had ordered a procedure that constituted a change in the terms of the contract. The court also noted that the agreement contained a provision allowing extra work to proceed without a fully agreed-upon change order.

In addition to being factually inapposite, the continuing viability of *Weeshoff* is questionable. In pronouncing that "California decisions have also established that particular circumstances may provide waivers of written 'change order' requirements," and "[i]f the parties, by their conduct, clearly assent to a change or addition to the contractor's required performance, a written 'change order' requirement may be waived," the court cited cases involving private parties, not public agencies. (*Weeshoff Constr. Co. v. Los Angeles County Flood Control Dist., supra*, 88 Cal.App.3d 579, 589.) Since its publication 28 years ago, no case has cited *Weeshoff* for this point. This is understandable as it is contrary to the great weight of authority, cited above, to the contrary.

We are not unsympathetic to the seeming unfairness of denying payment for work done in good faith by one who has no actual knowledge of the restrictions applicable to municipal contracts. (See, e.g., *Amelco Electric v. City of Thousand Oaks, supra*, 27 Cal.4th 228.) " ' "It may sometimes seem a hardship upon a contractor that all compensation for work done, etc., should be denied him; but it should be remembered that he, no less than the officers of the corporation, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with. If he neglect[s] this, or choose[s] to take the hazard, he is a mere volunteer, and suffers only what he ought to have anticipated. If the statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard." ' " (*Id.* at p. 235.)

However, Katsura was not the victim of an innocent mistake. He admitted that, at the time he performed the extra work, he knew it was outside the scope of the contract. Moreover, he had actual knowledge of the process for obtaining authorization for extra work. He acknowledged that he had a previous contract with the City involving the same project and submitted written requests authorizing extra work in compliance with the provisions of the contract. As our Supreme Court stated in *Amelco Electric v. City of Thousand Oaks, supra*, 27 Cal.4th at page 235, " ' "If the statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard." ' "

The judgment is affirmed. Respondent is to recover costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.