Filed 7/15/14  Pacific Western Bank v. Crane CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PACIFIC WESTERN BANK,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>TIMOTHY CRANE,<br><br>　　　　Defendant and Appellant. | B241453<br><br>(Los Angeles County<br>Super. Ct. No. BC447647) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Ernest M. Hiroshige, Judge.  Reversed.

　　　　Holstein, Taylor and Unitt and Brian C. Unitt for Defendant and Appellant.

　　　　Frandzel Robins Bloom & Csato, Andrew K. Alper, Hal D. Goldflam and Brad R. Becker for Plaintiff and Respondent Pacific Western Bank.

　　　　　　　　　　_____

Defendant Timothy Crane appeals from summary judgment granted in favor of Pacific Western Bank (the Bank) in its action on a $300,000 promissory note. Defendant contends the trial court erred in (1) refusing to permit him to amend his answer to allege two affirmative defenses; (2) refusing to grant a continuance of the hearing on the Bank's summary judgment motion to permit him to conduct discovery of three former bank employees; and (3) in granting summary judgment because triable issues of fact existed whether the promissory note should have been paid from a security interest he gave the Bank. We reverse, finding that the trial court erred in denying defendant an opportunity to amend his answer and conduct further discovery.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1. *Factual Background*

On July 30, 2009, defendant and Western Commercial Bank (the Bank's predecessor in interest)[1] entered into a business loan agreement pursuant to which defendant signed an unsecured promissory note (Note) in the sum of $300,000 that was due on November 5, 2009. On November 5, 2009, Bank and defendant entered into a "Change in Terms Agreement," extending the maturity date of the Note to May 5, 2010, and on May 5, 2010, Bank and defendant entered into another "Change in Terms Agreement," extending the maturity date of the Note to September 1, 2010. On May 5, 2010, Bank and defendant also entered into a "Business Loan Agreement." The business loan agreement provided that it would be in effect until all of defendant's outstanding loans were paid in full, or until September 1, 2010.

After defendant did not pay the balance due under the Note on September 1, 2010, the Bank sent defendant a letter dated September 14, 2010 demanding payment of the

---

[1] On November 5, 2010, Western Commercial Bank was closed by the California Department of Financial Institutions, and the Federal Deposit Insurance Corporation was appointed receiver. First California Bank acquired the assets of Western Commercial Bank. On May 31, 2013, Western Commercial Bank merged with respondent Pacific Western Bank; as a result, Pacific Western Bank is the successor-in-interest to First California Bank.

Note in full due to defendant's default. As of August 2011, the Bank claimed amounts due under the Note consisting of principal and interest of $321,543.75, and late charges of $87.18.

Defendant claimed that between December 2007 and March 2010, business entities[2] owned by defendant's father, Patrick Crane, entered into seven different business loan agreements totaling in excess of $2.8 million with the Bank for use in connection with the operation of Patrick Crane's business entities. These loans were negotiated with Carl Raggio, Kathy Bryan, and Jennifer Izziary on behalf of Bank. In early 2009, Patrick Crane and Mark Goss, a consultant for Patrick Crane's businesses, were told by Raggio and Bryan that the Federal Deposit Insurance Corporation (FDIC) was investigating the Bank's predecessor. In order to comply with the FDIC requirements, the Bank needed to retire a portion of Patrick Crane's debt. In order to retire the debt, the Bank requested defendant to execute the $300,000 Note.

Defendant also gave the Bank additional collateral for the Note consisting of a junior trust deed on property known as 139 Illinois Street, El Segundo, California. This trust deed dated March 23, 2010 secured a lien not to exceed $350,000 at any one time, and was executed by Patrick Crane on behalf of 139 Illinois E.S. LLC. Bank informed defendant and Goss that when the property was sold, the proceeds would be used to pay the Note. As a result of these representations, defendant executed the $300,000 Note. Defendant asserted he did not receive any of the $300,000 Note proceeds.

On May 14, 2010, Bank sold the 139 Illinois property for $2.45 million.[3] However, defendant did not receive any proceeds from the sale. Rather, the settlement statement showed that Bank received $350,000 from the sale, but no portion of this sales price was applied to the $300,000 loan.

---

[2] SRECO-Flexible, Shamrock Pipe Tools, Inc., and Flexible Pipe Tools, LLC.

[3] The record does not indicate whether this sale was a foreclosure.

### 2. *Procedural Background*

On October 15, 2010, the Bank commenced this action, and on December 29, 2010, the Bank filed its operative first amended complaint (FAC) alleging a claim for breach of the Note. On March 9, 2011, defendant answered the Bank's FAC and asserted 18 affirmative defenses, including unclean hands, satisfaction of obligation, and fraud. The Bank demurred to defendant's answer on the grounds the affirmative defenses failed to state facts sufficient to constitute a defense. Defendant did not oppose the demurrer, and on May 9, 2011, the court sustained the demurrer with leave to amend as to all affirmative defenses except for the first affirmative defense (failure to state a claim). Defendant filed his amended answer to the FAC on May 19, 2011, and asserted four affirmative defenses: arbitration, lack of standing, failure to mitigate damages, and satisfaction of obligation.

The Bank moved for summary judgment on August 25, 2011, contending it had established all of the elements of a claim for breach of the Note. The hearing on the Bank's summary judgment motion was set for November 9, 2011.

On October 26, 2011, defendant filed his opposition. Defendant contended triable issues of fact existed whether the Bank was entitled to judgment based upon the side agreement concerning the sale of 139 Illinois, the Bank's failure to apply the proceeds from the sale of 139 Illinois to payment of the Note, and the fact defendant never received any proceeds from the Note. Defendant asserted the affirmative defense of fraud based on the Bank's inducement to enter into the Note based on its assertion that the Note would be paid from the proceeds of sale of 139 Illinois.

Defendant also requested a continuance of the motion to conduct discovery of the three Bank employees who negotiated the Note. Defendant contended a continuance was necessary because after serving notices of deposition on October 13, 2011, defendant learned from the Bank on October 14, 2011 that Bank employees Bryan, Raggio and Irizarry were no longer employed at the Bank, and the Bank could not produce them; further their depositions could not proceed as noticed on October 24 through October 26,

4

2011. Defendant asserted that the information to be obtained from such witnesses at deposition would corroborate defendant's version of events that the trust deed on 139 Illinois was to serve as collateral for defendant's $300,000 Note.

In reply, the Bank asserted that defendant relied on inadmissible evidence to create triable issues of fact; defendant was limited to the defenses asserted in his answer, and such defenses failed as a matter of law; and in any event, defendant's defense of a side agreement failed because the trust deed on 139 Illinois was executed by Patrick Crane and did not reference any loans made by defendant; and defendant's evidence attempted to alter, vary, or contradict the terms of the Note and hence was barred by the parol evidence rule and statute of frauds. To rebut defendant's claim that he never received the loan proceeds, and to establish that the funds were disbursed to defendant, the Bank submitted copies of a letter dated July 31, 2009 in which defendant requested a draw of $256,440, and requested the check be made payable to SRECO-Flexible, a cashier's check in that sum, and a disbursement request by defendant for an additional wire transfer of $40,000.

On November 9, 2011, the trial court indicated in its tentative ruling that its inclination was to grant the continuance. The Bank argued that the case was filed in October 2010; defendant conducted written discovery; and only when the Bank filed its motion for summary judgment did defendant notice depositions, yet defendant had the opportunity to take depositions many months before. Further, two of the affirmative defenses which defendant asserted in his opposition (unclean hands and fraud) were affirmative defenses that were dropped from defendant's original answer when defendant filed his first amended answer. Defendant countered that depositions were noticed so they could be conducted before the hearing on summary judgment, and at that time learned that the Bank representatives no longer worked at the Bank. After taking the matter under submission, on December 27, 2011, the court denied the request for continuance, finding it to be at heart a delaying tactic. Further, the court found that the depositions at issue were relevant only to affirmative defenses not pleaded in defendant's first amended answer and thus not relevant to the motion for summary judgment; in any

5

event, the depositions were set for October 25 and 26, 2011, and could not have been taken in time to be incorporated in defendant's opposition, which was due October 26, 2011.

At the continued hearing of January 23, 2012, defendant asserted that he timely served the notice of depositions; did not abandon his affirmative defenses of unclean hands and fraud because his "first amended answer was filed and served on the heels of a demurrer, so we could only state those affirmative defenses upon which we had facts to rely. That is precisely why we're seeking this discovery and why we need [to take] the depositions." With respect to the $256,000 disbursement and additional $40,000 disbursement, defendant claimed that the sums were disbursed to SRECO-Flexible and thus the money "went from one pocket of the bank to the other" and "never left the bank" and that he was disabled and had no memory of the $40,000 disbursement. The Bank responded that defendant had not explained why he did not seek leave to amend the answer again in December when the court issued its ruling, or why discovery should be permitted absent the additional amendment to the answer. The Bank also asserted that the loan proceeds went to SRECO-Flexible, defendant's business. After taking the matter under submission, the trial court granted the Bank's motion for summary judgment. The court noted that it had previously denied defendant's request for a continuance in December 2011, and defendant did not point to any facts justifying reconsideration of that ruling; defendant did not deny that the monies were disbursed at his direction; and no evidence in the record supported defendant's claims of memory loss.

## DISCUSSION

### I. Amendment of Answer

Defendant contends the trial court abused its discretion in denying leave to amend his answer to plead affirmative defenses (fraud and unclean hands) to conform to the proof he presented in opposition to summary judgment, which consisted of evidence that the Bank made representations to defendant to induce him to sign the loan documents, including that the debt he was taking on would help his father's business, the Note would

6

be paid off by the mortgage on 139 Illinois, and the Bank admitted that some of the proceeds of the sale of 139 Illinois were provided to defendant. The Bank argues that defendant was given leave to amend at the time of the Bank's demurrer to defendant's original answer, but defendant never amended, and thus the court was well within its discretion in denying leave to amend.

The trial court is permitted in its discretion to allow amendments to pleadings in the furtherance of justice. (Code Civ. Proc., § 473.) "'Ordinarily, courts should 'exercise liberality' in permitting amendments at any stage of the proceedings. [Citations.] In particular, liberality should be displayed in allowing amendments to answers, for a defendant denied leave to amend is permanently deprived of a defense.' [Citation.] [¶] '[N]evertheless, whether such an amendment shall be allowed rests in the sound discretion of the trial court. [Citations.] And courts are much more critical of proposed amendments to answers when offered after long unexplained delay or on the eve of trial [citations], or where there is a lack of diligence, or there is prejudice to the other party [citation].'" (*Royal Thrift & Loan Co. v. County Escrow, Inc*. (2004) 123 Cal.App.4th 24, 41–42.)

Here, defendant was aware of the potential basis of his claims of fraud and unclean hands and asserted such claims at the time he filed his initial answer, thus putting the Bank on notice of such affirmative defenses. After the Bank demurred to his answer, defendant was further given the opportunity to amend his answer to set forth the factual basis of such claims at the time the trial court sustained the Bank's demurrer to defendant's answer. Although defendant should have amended his answer at this time to reiterate his defenses of fraud and unclean hands, his failure to do so was understandable given that defendant had not yet conducted sufficient discovery to determine the full factual bases for his claims. Further, the case had been pending a short time (less than a year) at the time the Bank filed its summary judgment motion, and the Bank was aware by virtue of defendant's initial answer of potential affirmative defenses. Thus, prejudice to the Bank was minimal from any delay that would result from defendant's amendment.

7

(See, e.g., *P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345.) As a result, given these circumstances, the trial court abused its discretion in denying defendant leave to amend his answer.

## II.  Continuance of Hearing on Summary Judgment

Defendant contends the trial court erred in failing to grant a continuance of the summary judgment motion to permit him to conduct additional discovery because defendant did not learn until October 14, 2011, that the witnesses would not be available for deposition and that 30 to 45 additional days were required to obtain the necessary discovery.

"When a continuance of a summary judgment motion is not mandatory, because of a failure to meet the requirements of Code of Civil Procedure section 437c, subdivision (h), the court must determine whether the party requesting the continuance has nonetheless established good cause therefor.  That determination is within the court's discretion." (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 716.)  We are guided by the principles stated in *FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 75–76, that a trial court may properly exercise its discretion to deny a summary judgment continuance where the party seeking the continuance has had ample time to conduct discovery and the additional discovery sought would pertain to irrelevant issues.  (See *Tilley v. CZ Master Assn.* (2005) 131 Cal.App.4th 464, 492 [trial court did not abuse its discretion in denying a last-minute, additional continuance request, where a clear implication from the facts was that that defendant was attempting to avoid summary judgment as long as possible].)

Here, the action was initially filed October 15, 2010.  Although defendant was aware of his defenses based on the side agreement that the Bank would use the 139 Illinois property to pay off the $300,000 Note, after plaintiff moved for summary judgment in August 2011, less than a year after commencing the case, defendant learned that those persons at the Bank who would have knowledge of the side agreement had left the Bank and would not be available in time for him to conduct discovery prior to the

8

hearing on the Bank's summary judgment motion. This time frame does not constitute ample time to conduct discovery. Furthermore, defendant's declarations identified with specificity those persons at the Bank with knowledge of the side agreement and thus established that evidence controverting the Bank's claims might exist, which is sufficient to entitle defendant to a continuance. (See *Frazee v. Seely* (2002) 95 Cal.App.4th 627, 634.) Finally, any prejudice to the Bank from delay in hearing the summary judgment motion to permit defendant to conduct discovery was nonexistent given that the Bank sought only a money judgment and should the Bank prevail, it would be entitled to interest at the legal rate on any sums due it that would more than adequately compensate it for any delay.

As we conclude that defendant must be given an opportunity to amend his answer and conduct further discovery into his affirmative defenses and reverse on that basis, we need not reach the merits of his motion for summary judgment.

## DISPOSITION

The judgment is reversed. Appellant is to recover his costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.

We concur:


CHANEY, Acting P. J.


MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9